**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×
DANIEL POZMANTER,

                  *Plaintiff,*                        **18 CV 2151**

     *v.*                                   **COMPLAINT**

INSTEVENT, INC., *d/b/a* VENUEBOOK,

                  *Defendant.*
------------------------------------------------------------------------×

       Plaintiff Daniel Pozmanter, by his counsel, The Harman Firm, LLP, alleges for his

Complaint against Defendant InstEvent, Inc., d/b/a VenueBook ("VenueBook"), as follows:

### PRELIMINARY STATEMENT

       1.     Mr. Pozmanter seeks damages and costs against VenueBook for for

discriminating against him on the basis of his disability by subjecting him to a hostile work

environment, failing to provide him with a reasonable accommodation, and terminating his

employment, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et

seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et

seq*.

       2.     Mr. Pozmanter also seeks damages and costs against VenueBook for unlawfully

interfering with his exercise of his rights under the ADA and NYCHRL.

### JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

       3.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's

claims arising under the ADA.

       4.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over

Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original

jurisdiction that they form part of the same case or controversy.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

6.      Mr. Pozmanter filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on July 6, 2017.  It has now been over 180 days since Mr. Pozmanter's EEOC charge was filed.

## TRIAL BY JURY

7.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

8.      Mr. Pozmanter, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

9.      Upon information and belief, at all times relevant hereto, VenueBook was and is a corporation organized under the laws of the State of New York with its principal place of business located at 116 West Houston Street, 6th Floor, New York, New York 10012 in New York County.

## STATEMENT OF FACTS

10.     On or about November 16, 2015, VenueBook offered Mr. Pozmanter a position as Lead Software Engineer.

11.     Mr. Pozmanter began work at VenueBook on or about November 18, 2015.

12.     As a Lead Software Engineer, Mr. Pozmanter was responsible for developing VenueBook's software platform, with a focus on back end web development.

13.     Mr. Pozmanter's primary job duties included development, architecture, and code review.

14.     Mr. Pozmanter received an annual salary of $150,000 and a $1,000 annual health and wellness stipend, as well as equity in VenueBook in the form of stock options.

15.     VenueBook also allowed Mr. Pozmanter to work remotely from Massachusetts for one week approximately every other month.

16.     On or about August 19, 2015, before the start of Mr. Pozmanter's employment at VenueBook, Mr. Pozmanter sustained a severe concussion.

17.     By the time that Mr. Pozmanter started work at VenueBook, he was fully able to complete his job responsibilities, though he still sometimes experienced concussion-related symptoms, including pain and nausea.

18.     Mr. Pozmanter continued to experience these symptoms throughout the fall of 2015 and began seeing a physical therapist to treat these symptoms in and around March 2016.

19.     In and around May 2016, Mr. Pozmanter began regularly seeing a gastroenterologist for chronic Irritable Bowel Syndrome (IBS).

20.     Mr. Pozmanter's gastroenterologist prescribed him a new treatment plan that involved changes to his diet and regimen.

21.     As a result of these changes, Mr. Pozmanter began suffering more severe IBS symptoms in the morning.

22.     Jonathan Katz, VenueBook's Chief Technology Officer and Mr. Pozmanter's direct supervisor, discussed Mr. Pozmanter's IBS treatment plan with Mr. Pozmanter.

23.     Mr. Katz and Mr. Pozmanter agreed that Mr. Pozmanter would be allowed to work remotely in the mornings as an accommodation for his medical condition.

24.     After reaching this agreement, Mr. Pozmanter began arriving at work in the early afternoons.

3

25.     Mr. Pozmanter's accommodation functioned well, and he continued to fulfill his job responsibilities: He completed his work remotely in the morning and worked outside of his normal hours on nights and weekends, more than making up for any lost time.

26.     Mr. Pozmanter frequently received praise from his coworkers and supervisors, including consistent positive feedback from Mr. Katz in their weekly one-on-one meetings.

27.     In and around the summer and fall of 2016, VenueBook and Mr. Pozmanter discussed the possibility of Mr. Pozmanter's promotion.

28.     On or about November 18, 2016, the one-year anniversary of Mr. Pozmanter's hire, VenueBook promoted Mr. Pozmanter to Director of Engineering, Back End.

29.     While this promotion was not accompanied by a salary increase, VenueBook represented that Mr. Pozmanter could expect a raise "consistent with [his] position" when VenueBook secured its next round of funding, and Mr. Pozmanter received praise from the entire VenueBook executive team for his diligent work and contributions to the company.

30.     VenueBook also promised Mr. Pozmanter additional stock options with his promotion.

31.     On or about December 28, 2016, Mr. Pozmanter sustained a concussion at home in his kitchen.

32.     On or about the following day, December 29, 2016, Mr. Pozmanter consulted his neurologist, who recommended that Mr. Pozmanter rest and minimize screen time as much as possible.

33.     Although this concussion was not as severe as Mr. Pozmanter's previous concussion, it still caused lingering neurological issues, including occasionally slurred speech;

cognitive difficulties, including memory, concentration, and language impairments; persistent

nausea; low energy; and drowsiness.

34.     These symptoms were exacerbated by Mr. Pozmanter's prior head trauma.

35.     Mr. Pozmanter continued to regularly discuss his medical condition with his

neurologist, who recommended that he begin physical therapy again.

36.     Mr. Pozmanter informed VenueBook of his concussion and accompanying

symptoms and requested related accommodations.

37.     For example, Mr. Pozmanter regularly requested that his colleagues make written

notes of their comments to him to allow him to review them later and explained that his

concussion had affected his memory.

38.     Despite his symptoms, Mr. Pozmanter fulfilled his job duties and received no

negative feedback from VenueBook.

39.     On or about January 24, 2017, Mr. Katz and Anetha Brady (VenueBook's VP of

Growth) approached Mr. Pozmanter about his medical condition and discussed potential

accommodations, including the continuation of his ongoing accommodation of working remotely

in the mornings.

40.     In this meeting, Mr. Katz and Ms. Brady informed Mr. Pozmanter that

VenueBook would no longer allow him to work remotely in the mornings.

41.     Mr. Pozmanter, though surprised and worried by this directive, accepted

VenueBook's decision and requested a few days to gradually adjust to this schedule.

42.     Despite the difficulties it presented due to Mr. Pozmanter's medical condition,

within a few days Mr. Pozmanter had complied with VenueBook's instruction and was arriving

at work in the mornings as instructed.

43.     On or about January 31, 2017, Mr. Pozmanter began to feel very ill.

44.     On or about February 1, 2017, Mr. Pozmanter visited his doctor, who diagnosed him with the flu and gave Mr. Pozmanter a doctor's note, instructing him to stay home from work.

45.     Mr. Pozmanter immediately informed Mr. Katz of his illness and of his doctor's instructions.

46.     Over the weekend, Mr. Pozmanter continued to experience flu symptoms and promptly emailed Mr. Katz to let him know that, while he would try his best to come to work on Monday, he was still feeling very sick.

47.     Mr. Katz's only response was to demand that Mr. Pozmanter visit an urgent care clinic over the weekend and send a doctor's note by 10:30 a.m. on Monday morning if he would need to miss work due to his flu symptoms.

48.     Though still ill, Mr. Pozmanter reported to work on Monday morning, afraid for his job if he did not.

49.     On or about February 6, 2017, Mr. Pozmanter arrived at work and worked a full day without incident.

50.     On or about the following day, February 7, 2017, Mr. Pozmanter was called to a meeting with Mr. Katz and Ms. Brady at 6:00 p.m.

51.     In this meeting, VenueBook summarily terminated Mr. Pozmanter's employment on the grounds that he had not been adequately "present" in the office.

52.     Mr. Katz then told Mr. Pozmanter that his code had been "slipping" in the previous month.

53.     When Mr. Pozmanter asked for more details on this supposed poor performance, however, Mr. Katz could only cite one example, though he claimed—without clarification—that there were "many others."

54.     Mr. Katz gave Mr. Pozmanter conflicting information about the problem with Mr. Pozmanter's "presence" in the office, as well, implying at various points that Mr. Pozmanter had not actually been sick; that Mr. Pozmanter had been sick, but had not adequately communicated that information to VenueBook; and that Mr. Pozmanter was "taking advantage" of VenueBook by using his agreed-upon accommodation, then agreeing to stop using it when told to do so by VenueBook.

55.     VenueBook unilaterally revoked Mr. Pozmanter's remote-work accommodation, then summarily terminated his employment just one day after his return from sick leave, in part due to his use of a previously agreed-upon accommodation.

56.     By citing Mr. Pozmanter's presence in the office as the primary reason for his termination, VenueBook made clear that Mr. Pozmanter's disabilities and requested accommodations motivated its decision to terminate him.

57.     Apart from a period home with the flu, any lack of "presence" in the office on Mr. Pozmanter's part was due to his disabilities.

58.     Mr. Pozmanter took less vacation time than his colleagues did, and he routinely worked weekends and late into the night.

59.     Further, VenueBook has a pattern of discrimination against disabled employees: Two other VenueBook employees with disabilities—one of whom suffered from IBS, like Mr. Pozmanter, and requested similar accommodations—experienced discrimination and harassment from VenueBook during Mr. Pozmanter's employment.

60.     Ultimately, one of those employees was terminated, like Mr. Pozmanter, while the other resigned due to the ongoing discrimination and hostility.

61.     In reality, VenueBook terminated Mr. Pozmanter's employment because of its discriminatory animus towards Mr. Pozmanter related to his disabilities and need for reasonable accommodations.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of the ADA

62.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 61 with the same force as though separately alleged herein.

63.     The ADA prohibits an employer from discriminating against a qualified individual with a disability in terms, conditions, and privileges of employment.

64.     Defendant violated the ADA when it subjected Plaintiff to a hostile work environment based on his disability, including making disparaging comments trivializing his disability and need for accommodations, treating him less well than non-disabled employees, subjecting him to different policies and procedures, and limiting his ability to succeed in his job.

65.     As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

66.     Defendant's discriminatory conduct was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the ADA

67.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 66 with the same force as though separately alleged herein.

68.     The ADA requires an employer to engage in an interactive process to identify reasonable accommodations for an otherwise qualified employee with a disability.

69.     Defendant violated the ADA when it refused to grant Plaintiff's request for a reasonable accommodation for his disability and failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disability.

70.     As a direct and proximate consequence of Defendant's failure to accommodate his disability, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

71.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### Wrongful Termination in Violation of the ADA

72.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73.     The ADA prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of disability.

74.     Defendant discriminated against Plaintiff on the basis of his disability by terminating his employment based on his disability.

75.     As such, Defendant has violated the ADA.

76.     As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

77.     Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**FOURTH CAUSE OF ACTION**
**Interference in Violation of the ADA**

78.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79.     The ADA provides that an employer may not "coerce, intimidate, threaten, or interfere with" an employee's exercise of their rights under the ADA or on account of the employee's having exercised their rights under the ADA.

80.     Plaintiff exercised his protected rights under the ADA when he requested a reasonable accommodation for his disability.

81.     Defendant violated the ADA when it interfered with Plaintiff's exercise of his ADA-protected rights by subjecting him to further discrimination and harassment and terminating his employment because of his requests for reasonable accommodations.

82.     As a direct and proximate consequence of Defendant's ADA interference, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

83.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 82 with the same force as though separately alleged herein.

84.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of disability.

85.     Defendant violated the NYCHRL when it subjected Plaintiff to a hostile work environment based on his disability, including making disparaging comments trivializing his disability and need for accommodations, treating him less well than non-disabled employees, subjecting him to different policies and procedures, and limiting his ability to succeed in his job.

86.     As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

87.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SIXTH CAUSE OF ACTION
### Failure to Make a Reasonable Accommodation in Violation of the NYCHRL

88.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89.     The NYCHRL requires an employer to make a reasonable accommodation to enable an employee with a disability to satisfy the essential requisites of a job, provided that the disability is known or should have been known to the employer.

90.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the NYCHRL.

91.     Defendant was fully aware of Plaintiff's disability, as Plaintiff notified Defendant of his disability and requested related reasonable accommodations.

92.     Defendant refused to grant Plaintiff's requests for a reasonable accommodation for his disability and failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disability.

93.     As such, Defendant has violated the NYCHRL.

94.     As a direct and proximate consequence of Defendant's failure to accommodate his disability, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

95.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SEVENTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

96.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 95 with the same force as though separately alleged herein.

97.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of disability.

98.     Defendant violated the NYCHRL when it terminated Plaintiff's employment based on his disability.

99.     As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

100.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**EIGHTH CAUSE OF ACTION**
**Interference in Violation of the NYCHRL**

101.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 100 with the same force as though separately alleged herein.

102.     The NYCHRL provides that an employer may not coerce, intimidate, threaten, or interfere with an employee's exercise or enjoyment of their rights under the NYCHRL.

103.     Plaintiff exercised his protected rights under the NYCHRL when he requested a reasonable accommodation for his disability.

104.     Defendant interfered with Plaintiff's exercise of his NYCHRL-protected rights by terminating his employment because of his request for a reasonable accommodation.

105.     As such, Defendant has violated the NYCHRL.

106.     As a direct and proximate consequence of Defendant's NYCHRL interference, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    A.  For the first cause of action, damages to be determined at trial;

    B.  For the second cause of action, damages to be determined at trial;

    C.  For the third cause of action, damages to be determined at trial;

    D.  For the fourth cause of action, damages to be determined at trial;

    E.  For the fifth cause of action, damages to be determined at trial;

    F.  For the sixth cause of action, damages to be determined at trial;

    G.  For the seventh cause of action, damages to be determined at trial;

    H.  For the eighth cause of action, damages to be determined at trial; and

    I.  For such other and further relief as the Court deems just and proper.


Dated: New York, New York
       March 9, 2018

                      By:    s/ Walker G. Harman, Jr.
                             Walker G. Harman, Jr. [WH-8044]
                             Owen H. Laird [OL-6994]
                             THE HARMAN FIRM, LLP
                             234 Fifth Avenue, #409
                             New York, NY 10001
                             (212) 425-2600
                             wharman@theharmanfirm.com
                             olaird@theharmanfirm.com

                             *Attorneys for Plaintiff*